## Langdon Hubbard and others v. Richard Winsor and another.

*Partnership property, assessment of.* Certain partnership property, alleged to have been held in joint tenancy, was handed in for taxation, and taxed as partnership property. *Held,* that the assessment was properly made, as there could be no individual assessment in such a case.

*Board of Supervisors, effect of adjournment of: Tax, mode of determining amount of.* The law (1 *C. L.* § 807,) requires supervisors to act at "their session in October." They met in pursuance thereof, and at a subsequent adjourned meeting — November 12th — fixed the amount of taxes for the ensuing year. Instead of fixing a specific sum, to be raised by taxation, the Board directed a per centage on the assessed value. *Held,* that the session in October embraced all adjournments, although they might run into another month, and that the law merely refers to it by way of designation. *Held further,* that the designation of a per centage on a definite sum was just as certain as though it were calculated; nothing remaining to be done except simple computation.

HUBBARD *v.* WINSOR.

*Equitable relief: Treasurer's bond, effect of delay in filing: Assessment roll: Warrant.* The proceedings required by law, and the filing of the Treasurer's bond having taken place after the time designated by law, but before the time required for the handing over of the assessment roll, it was *held*, that the delay was immaterial. *Held further*, that delay, beyond the time required by law, in appending the warrant to the assessment roll, furnished no ground of relief.

*Equitable relief: Misdescription of lands for assessment by owner.* Where a misdescription of lands in an assessment roll was caused by following a list furnished by the parties themselves, they were not allowed to claim it as a ground of equitable relief, and were remitted to their legal remedies.

*Equity pleadings, evidence.* Where evidence is not applicable to any allegations in the pleadings, it can form no basis for relief. — 6 *Mich.* 133; 11 *Id.* 529; 13 *Id.* 367.

*Heard October 19th. Decided November 10th.*

Appeal from Huron Circuit in Chancery.

The bill was filed to restrain the collection of certain taxes, alleged to be illegally assessed against complainants jointly, upon certain lands and personal property in the township and county of Huron, for the year 1862.

Upon the filing of the bill the circuit judge granted a temporary injunction, and upon final hearing of the cause, upon pleadings and proofs, made the same perpetual by decree.

The facts are stated in the opinion.

*Wm. T. Mitchell*, for complainants.

1. The lands upon which the taxes were assessed were owned by the complainants in their several names, as joint owners or tenants in common, and were therefore improperly assessed to them as co - partners in the partnership name; their several interests should have been assessed, or, if not known, they should have been assessed as unknown. They could not legally be assessed to the partnership. — *Comp. L.* §§ 802, 800, *and subd.* 6, § 804.

Personal property only can be assessed in the partnership name. — *Id.* § 793.

When real estate is held by partners for the purpose of the partnership, they do not hold as partners, but as tenants in common, and the rules relative to partnership

property do not apply in regard to it. — 15 *Johns.* 169; 2 *Caines R.* 166; 21 *Pick.* 64; 2 *Gibbs,* (*Mich.*) 98, 486.

2. The assessment of the northeast quarter of section 4, town 18 north of range 14 east, "less lots sold," at $12,000, was entirely void, for want of certainty in the description. There is no definition of what lots had been sold or what was assessed.

The collection of the tax upon this land should be restrained, were there no other defects in the assessment.— *Comp. L.* § 804; 3 *Mich.* 172; 2 *Blackf.* 51; *Blackwell on Tax Titles,* 159, 160, 162, 166.

3. The supervisor made no sufficient inquiry or examination as to the value of the property assessed, and especially as to the personal property, he having no means of judging its amount, quality or value, and taking no steps to ascertain the same, as required by the statute.— *Comp. L.* §§ 795, 800.

4. The board of supervisors did not, at their annual session in October, as required by the statute, make any determination of the amount to be raised for county purposes; nor did they, at their session in that month, make any apportionment of the amount to be raised for state or county purposes among the several towns of the county as required by the statute. Any such determination or apportionment at any other time was and is entirely void. At the session in October no action whatever was taken in regard to the amount of taxes to be raised or their apportionment.— *Comp. L.* § 813.

5. The board did not fix, ascertain, or determine any basis upon or for which the per centage, was to be raised. The amount and not the per centage should have been ascertained and determined, and placed at large upon the record. Their action at this time did not in any respect comply with the statute requiring a determination of the amount to be raised. Both the time and the manner, or more properly speaking, the failure of

determination rendered any tax for county purposes entirely void. There was an entire failure to determine any amount.—*Id.* § 813.

6. There was no certificate made by the clerk of the board of the amount apportioned to be assessed upon the taxable property of the township of Huron, but simply a certificate of the rate per cent., so that the supervisor had no authority for levying the taxes.—*Comp. L.* § 814.

7. The collection of taxes when illegally assessed, may be restrained by injunction, and most especially in cases where a levy has been made, as in this case, for the collection of taxes absolutely void and unauthorized by law.

The court has undoubted jurisdiction to interfere by injunction where public officers are proceeding illegally and improperly under a claim of right to do any act to the injury of the rights of others.—*Harring.* (*Mich.*) *Ch.* 72; 3 *Ham.* 72.

Under the action, or rather lack of action, of the board of supervisors, the whole state and county taxes were void. An illegal and void assessment is no assessment at all; it is a nullity, and authorizes no person to act under it or enforce it.—2 *Term R.* 372; 10 *Mass.* 17; 11 *Id.* 220; 13 *Id.* 282; 15 *Id.* 144; 5 *Conn.* 190; 2 *Id.* 550; 14 *Ill.* 223.

The cases in 3 *Mich.* 22 *and* 25 *Ill.* are entirely dissimilar to the case in hearing.

We insist, therefore, that the complainants are entitled to a decree for perpetual injunction, as prayed in their bill.

*Newberry & Pond,* for defendants.

1. The lands were properly assessed to complainants as co-partners.

*a.* The bill, upon its face, shows that the lands were owned by complainants as partners, and not merely as tenants in common.

*b.* The bill in effect alleges that the lands were handed in by Langdon Hubbard, as partnership property, subject to taxation, and it affirms and seeks the benefit of his action in this regard.

Under these circumstances complainants are not in a position to object to the tax upon that ground, even if they otherwise might have done so.

*c.* Conceding that the lands should have been assessed to the complainants, severally, according to the undivided interest of each, the assessment to them as partners was not so prejudicial to their interests, that a court of equity will aid them to resist its collection.

So far as can be seen, no possible injury could result to them from this irregularity — if irregularity it be — in the assessment, and hence equity requires that they should overlook it and pay the tax.

2: The action of the board of supervisors in ascertaining and determining the amount of money to be raised by tax for county purposes, and apportioning the same, together with the state tax, amongst the several towns, was in substantial compliance with the statutes.

*a.* The amount to be raised for county purposes was ascertained and determined at the October session of said board.  It was regular for the board of supervisors to adjourn from time to time, and thus continue the October session into November.

*b.* Fixing the amount of county tax to be raised at $12\frac{2}{10}$ mills on the dollar of valuation of property in the county, as appears to have been done, was a determination of the amount within the statute.  *Id certum est, quod certum reddi potest.*

3. The action of the board of supervisors in that behalf as set forth in the bill was a sufficient apportionment of

the state and county tax to be raised among the several towns.

The amount to be raised by each town was as definitely fixed as if it had been stated in dollars and cents. If, however, it should be held that this action of the board of supervisors was not an apportionment in accordance with the statute, the irregularity is cured by *Sess. Laws*, 1863, *p.* 25.

4. The provision of the statute, *Comp. L.* 816, which requires the supervisor to notify the township treasurer on or before the 25th of October, of the amount of state and county tax apportioned to his township, and said treasurer to file his bond with the county treasurer on or before the 5th day of November, is directory, and a failure to strictly comply with it does not vitiate the tax.

This proposition seems too clear for argument.

5. If there was such defect or irregularity in the proceedings of the proper officer in relation to the matters considered under points I, II and III, as to otherwise vitiate the tax roll for said township of Huron, such defects are irregularities, and cured by statutes. — *Sess. Laws*, 1863, pp. 25, 26, 35, 36.

These statutes are valid.— 28 *Conn.* 97; 36 *Penn.* 29; 3 *Dutcher*, 185; 12 *Md.* 195.

6. If the proceedings of the board of supervisors in relation to the ascertaining and determination of the amount of money to be raised by tax for county purposes, and the apportionment thereof, together with the state tax, among the several towns, were so irregular or defective as to render a sale of land for a tax of that year void, or as to enable the complainants to resist at law the collection of said tax, yet a court of equity will not aid him to resist its collection.

The tax undertaken to be levied by the board of supervisors, was authorized by law, and said board authorized to levy it, and complainants' property upon which it was

assessed was subject to assessment for such tax, and hence, however defective and irregular the proceedings of said board or other officers charged with duties relative to the levy and assessment of said tax may have been, complainants are *equitably* bound to pay it, and therefore do not stand in a position to ask a court of equity to aid them in resisting its collection. If they think they can defend at law, they have their right to try the experiment, and should be left to do so.—2 *Mich.* 560; 22 *Ill.* 35, 574, 594.

7. There is no allegation in the bill that by an error of the supervisors the state and county tax was extended upon the tax roll of said town of Huron upon a wrong basis, by which said tax was increased, and hence no relief can be claimed upon that ground.— 2 *Mich.* 560.

But if relief can be claimed upon that ground, complainants, notwithstanding said error, are *equitably* bound to pay all the tax except the excess, and are not entitled to an injunction against the collection of the entire tax.— 25 *Ill.* 557.

8. The bill makes no case entitling complainants to the aid of a court of equity, even upon the theory that the tax sought to be collected was wholly illegal.

A court of equity will never interfere to prevent the collection of a tax by seizure and sale of personal property —a mere trespass—if the tax sought to be collected be unauthorized.—2 *Mich.* 584; 13 *Id.* 549.

CAMPBELL J.

This was a bill to restrain the collection of certain taxes alleged to have been wrongly assessed against complainants, who were doing business as partners in the town of Huron, in Huron County.

The grounds set up for relief are that real estate belonging to the complainants was assessed to the partnership, and that the valuation of property, real and

personal, was excessive; that the supervisors did not properly determine the amount of taxes to be levied, and that such action as they took was had too late. It is also claimed that the proceedings to complete the roll and warrant, and file the Treasurer's bond, were not had within the statutory period, and that as to one parcel of land assessed, the description is defective. It appears in proof also, that the taxes were extended at about fifteen per cent. too much.

We think the objections concerning the mode of assessing real estate are not tenable. It appears that the land was all handed in on one list with other property belonging to the firm, and as it is alleged in the bill to be held in joint tenancy, there could be no assessment of shares in it individually to the owners severally, because their estate as set out is indivisible. We can not perceive how any injury could accrue from this assessment, which is substantially, if not technically, made to the true legal owners.

The objections to the conduct of the supervisor in refusing to allow evidence to reduce the valuation are not made out by proofs, and the charges are denied.

The order of the supervisors fixing the amount of taxes was not made until November 12th. That meeting was one upon adjournment from the 10th, which was also an adjourned meeting continued from October. The law requires the supervisors to act at " their session in October." — 1 C. L. § 807.

The law gives them power to adjourn their meetings from time to time, as they may deem necessary. — 1 C. L. § 335. We think the session in October embraces all adjournments, although they may run into another month, and that the law merely refers to it by way of designation.

Instead of fixing a specific sum to be raised by taxation, the board directed a per centage on the assessed

15 Mich. — L.

value. The legislature subsequently passed a statute designed to legalize this method of taxation, and it is claimed this statute is void. We do not perceive any illegality in the original proceedings, and do not deem it necessary to inquire into the validity of the law. The designation of a per centage on a definite sum is just as certain as if it were calculated and stated in figures, and leaves nothing to be done to make it known, except a simple computation. It would be absurd to hold a tax valid or void according as a sum of this nature is done by one or another officer from the same data. The law presumes that the rules of arithmetic are the same in all offices.

There is no dispute but that all other steps were taken, and regular except as to time. As the proceedings required by law and the filing of the treasurer's bond took place before the roll was required to be handed over, we think the delay immaterial. Nor do we think the delay in appending the warrant furnishes any ground of relief.

It is also urged that a description of a tract of land "less lots sold," renders the assessment invalid as to that parcel. This objection is not pointed out by the bill, and, so far as it appears, the assessment follows the list of property handed in. Although, if so described, the land cannot be held bound, yet complainants should have pointed out this defect specifically, if they meant to rely upon it; and should not be allowed to object in this court to their own description. The defect is one which would destroy the tax at law as well as in equity, and under the circumstances we must leave them to their legal remedy.

The excess in the amount of taxes levied is not mentioned in the bill, and appears for the first time in the proofs. This evidence, not being applicable to any allegation in the pleadings can form no basis for relief.

*Warner v. Whittaker*, 6 *Mich.* 133; *Peckham v. Buffam*, 11 *Id.* 529; *Moran v. Palmer*, 13 *·Id.* 367.

The decree' below must be reversed, and the bill must be dismissed, with costs of both courts.

The other Justices concurred.