WILLIAM J. McGILLIN v. CHASE COUNTY ET AL.

FILED FEBRUARY 20, 1894. NO. 5526.

**Taxes:** INJUNCTION TO RESTRAIN COLLECTION. The plaintiff filed a petition praying for an injunction to restrain a county and its officers from the forcible collection of a tax against personal property, averring, as grounds therefor, that the tax was illegal or unauthorized. The evidence discloses that he listed the property for taxation, the schedule on its face being a list of his individual property, signed by him and sworn to individually, and not as manager for a company, for whom he alleges in his bill for injunction that he listed the property, and to whom he stated it belonged, the taxes being charged to him in the tax lists as transcribed from the assessor's book. *Held,* That this was not such a state of facts as would entitle him to have the collection of the taxes enjoined or restrained as illegal or unauthorized, as such entry or charge on the tax list was the result or consequence of his own voluntary act.

ERROR from the district court of Chase county. Tried below before WELTY, J.

*Charles W. Meeker,* for plaintiff in error.

*S. E. Starry, contra.*

HARRISON, J.

November 25, 1890, the plaintiff filed a petition in the district court of Chase county, Nebraska, praying for an injunction. The petition was positively verified, and probably a better understanding of the grounds of the complaint and the relief sought will be obtained by here giving the pleadings in the case. The bill was as follows:

"Now comes the above named plaintiff, William J. McGillin, and respectfully represents and makes known to the honorable court, that he is a resident and taxpayer of Chase county, Nebraska, and that he is the owner and possessor

of real estate to the amount of 800 acres, and personal property consisting of horses, cattle, hogs, machinery, farming implements, harness, wagons, household goods, etc., of the value of $10,000, all in said county and state aforesaid.

"Second—Your petitioner alleges and says that heretofore, to-wit, from on or about the first day of January, 1885, until on or about the 28th day of October, A. D. 1888, he was the duly chosen, selected, and acting manager of the Harlem Cattle Company, a corporation duly incorporated under and by virtue of the laws of the state of Colorado, and doing business in the counties of Chase, Dundy, and Hitchcock, and state of Nebraska; that it was the business of said Harlem Cattle Company to purchase, buy, raise, and breed, and sell horses, cattle, and hogs, both common and thoroughbred, and that while so engaged in said business of stock raising, buying, and selling, said company had upon its Chase county ranches, at all times, several hundred head of horses and cattle, and also several thousand dollars' worth of other personal property, consisting of farm machinery, wagons, harness, and household furniture, and did have and own upon its Harlem ranch in Chase county, Nebraska, almost all the buildings and other improvements it owned in said county, and that said Harlem ranch was petitioner's headquarters as manager of and for said Harlem Cattle Company for said Chase county.

"Third—Your petitioner represents that during the year 1888 the said Harlem Cattle Company had and kept the major or greater portion of their said stock of horses and cattle in Chase county, upon their Harlem ranch, which is located in what was then known and called 'McGillin Precinct,' in said county, there being kept thereon about 350 head of cattle, and about 150 head of horses, and about 10 to 25 head of hogs; also, there was kept at said Harlem ranch the greater portion of their farm machinery, household and kitchen furniture, wagons, and feed; and that

the total value of all of said personal property, so as afore-
said kept upon said Harlem ranch, during said year of
1888 was between $10,000 and $15,000; that all of said
property so as aforesaid was the property of and belonged to
the Harlem Cattle Company, and was under their exclusive
charge, control, and directions, and that your petitioner had
no authority or interest in them or over it save only as was
delegated to him by said Harlem Cattle Company as its
manager.

"Fourth—Your petitioner further represents that all of
said property of the said Harlem Cattle Company in the
counties of Chase, Hitchcock, and Dundy was mortgaged
to the Kit Carter Cattle Company of Texas for about
$92,000, and said mortgage was duly of record in the
clerk's office in said counties.

"Fifth—Your petitioner further represents that for the
year 1888 the county officers and local assessors and taxing
officers of Chase county procured an assessment to be made
by the precinct assessors in said county upon the real and
personal property of said Harlem Cattle Company and
levied a tax thereon and spread the same upon the records
in the tax books of said county, and that the county
officers and local assessors and taxing officers for the pre-
cinct then known, designated, and called 'McGillin Pre-
cinct,' in said Chase county, one of the precincts in which a
large portion of the lands, buildings, and personal property
of the said Harlem Cattle Company was then kept and lo-
cated, said assessor being H. B. Walker, of said McGil-
lin precinct, listed, scheduled, and assessed the said real
and personal property of the said Harlem Cattle Company
in the said McGillin precinct from the data, information,
and facts furnished to said H. B. Walker by your peti-
tioner, then the manager of said Harlem Cattle Com-
pany, 350 head of cattle, valued at $5,000; horses, 150
head, valued at the sum of $6,000; hogs, 10, valued at
$10; agricultural implements, household goods, etc., valued

$140; carriages and wagons, 3, valued at $30; making a total valuation of $11,185. That after said assessor had finished taking down, listing, and scheduling property, he passed said list or schedule to your petitioner to sign for said Harlem Cattle Company, and your petitioner did then and there, in the presence of said H. B. Walker, as-sessor for said McGillin precinct, sign the same, 'W. J. McGillin, Manager,' and did there acknowledge the said schedule to be true, as I believed, said schedule being marked at the top, 'Property of Harlem Cattle Company.'

"Sixth—That said county officers and local taxing offi-cers and assessor of said county proceeded to and levied a tax thereon and spread the same upon the tax books and records of said county as a tax against the petitioner in and for said precinct of McGillin, instead of against the Harlem Cattle Company, the rightful owners of said prop-erty, and said tax for said year of 1888 for said precinct of McGillin was spread, and does now stand against this petitioner, on the tax books and records of said Chase county, and the same was wrongful, illegal, unlawful, and unjust.

"Seventh—The total valuation placed upon said per-sonal property of said Harlem Cattle Company in said precinct of McGillin by said assessor for said year of 1888, and wrongfully, illegally, and unjustly spread upon the tax books and records against this petitioner, was the sum of $11,185, and the total amount of tax levied thereon for said year 1888 by the county officers and local taxing offi-. cers of said county was and is the sum of $303.39, which was and is spread upon the tax books of said county as a tax lien and against the property of this petitioner.

"Eighth—Your petitioner further alleges that at and during the year 1888 he was not the owner of, in his own name or right, any personal property in said Chase county which was subject to assessment and tax whatever, except his bedroom set and wearing apparel, the total value

of which would not exceed $15, and that he was not the owner of any of the personal property assessed to the Harlem Cattle Company in said precinct of McGillin, and erroneously, illegally, unlawfully, and unjustly spread upon the tax records of said county in this petitioner's name for said year of 1888, but that all of petitioner's personal property then owned by him was assessed and taxed in Hitchcock county, the county in which his personal property was then kept.

"Ninth—Your·petitioner further alleges and says that on or about the 28th day of October, 1888, and while petitioner was yet the manager of said Harlem Cattle Company, the Kit Carter Cattle Company commenced an action in foreclosure of its mortgage against the said Harlem Cattle Company in the United States circuit court for the district of Nebraska, and at the same time made their application to said United States circuit court for the appointment of a receiver for all the property of said Harlem Cattle Company, which application was by the said court duly allowed and granted, and Erastus D. Webster was by said court duly appointed and empowered receiver, and the said Erastus D. Webster, as receiver, did immediately take full possession of all of the said Harlem Cattle Company's property and effects in the state of Nebraska; that said receiver held said property and effects until the 19th day of August, 1889, when the whole of the personal property of said Harlem Cattle Company was, by the order of. the United States court, sold, and your petitioner, being the purchaser thereof, paid into the said United States court therefor the sum of $36,200, and by order of said circuit court the said entire personal property and effects of the said Harlem Cattle Company was, by said Erastus D. Webster, receiver, delivered over to the possession of your petitioner, and he became the sole and absolute owner of the same.

" Tenth—Your petitioner alleges further that said tax

of $303.39, for the year of 1888, so as aforesaid spread upon the reports and tax books of said county, upon the $11,185 valuation in said McGillin precinct of said Chase county, against this petitioner by the assessor and local taxing officer of said Chase county, is wrongful and unjust, and for an illegal and unauthorized purpose.

"Eleventh—Your petitioner further alleges that said Chase county, through its officers and assessors, had no authority of law for the assessment of said property, and the levying of said taxes in said precinct of McGillin, in said Chase county, to this petitioner; that said property was not assessable or taxable to him under the law, and could only be valued, assessed, and levied for taxation to the legal and proper owner thereof, the Harlem Cattle Company, and the pretended assessment, levy, and taxation of the same to this petitioner by the local taxing authorities of said Chase county is null and void, and of no effect in law as to this petitioner other than to create an apparent lien and cloud upon petitioner's property.

"Twelfth—Further, this petitioner represents to the court that said tax, so levied by the said taxing officer and authorities of Chase county for the precinct of McGillin upon the said property of said Harlem Cattle Company for the year 1888, and spread upon the tax books and records of said county as a tax lien against the said property of your petitioner, does now appear thereon as an apparent lien upon his property in said county, and that said county, through its officers, and through the said Robert A. Ewing, as treasurer of said county, have threatened to proceed to the collection of said tax, as aforesaid wrongfully and illegally assessed and recorded against this petitioner, by process of law, and that unless they are restrained by said court, the county, through its officers, will proceed to collect the said tax so illegally levied and recorded by said county on the property of petitioner by advertisement and sale of petitioner's personal property; that this petitioner

has no remedy at law to prevent said county and Robert A. Ewing, treasurer, and its officers from collecting the said tax by distress and sale, and that he will suffer great and irreparable damage if they are allowed to proceed in the collection of the same.

"Therefore, your petitioner prays that a writ of injunction may be issued restraining the said county and the said Robert A. Ewing, as treasurer of said county, and all other officers and agents of said county, from in any manner interfering with or intermeddling with the property of this petitioner, and restrain them, and each of them, from the collection of said tax, or any part thereof, and from taking any steps under the law for that purpose, and for the return of all property already taken and held by them, and that on the final hearing of said cause the said tax may be decreed null and void and of no lien or effect on the property of or against this petitioner, and that said temporary injunction may be made perpetual, together with such other and further equity as justice may require."

This was presented to the county judge with the showing of absence from the county of the district judge, and the county judge allowed a temporary injunction. March 26, 1891, the defendants filed answer as follows :

"Now come the above named defendants, and in answer to plaintiff's petition, deny each and every allegation therein, except those especially hereinafter admitted.

"Admit that plaintiff herein is a resident and taxpayer in Chase county, Nebraska, as alleged and set forth in first count of said petition.

"Wherefore defendants pray that said temporary injunction be dissolved, with such other and further relief as equity and justice may require."

May 3, 1892, there was a trial had of the issues, and the following is the journal entry of the proceedings in this case, to-wit :

"On this third day of May, 1892, this being one of the

days of the regular May, A. D. 1892, term of the district court begun and holden in Chase county, Nebraska, and this cause coming on to be heard before the court upon the motion of the defendants to vacate and set aside the injunction heretofore granted in the case, was submitted to the court upon the petition, answer, and evidence of the parties, on consideration whereof it is ordered that said motion be sustained, and the court finds, upon the issues joined, in favor of the defendants.

"It is therefore considered, adjudged, and decreed by the court that the injunction heretofore granted in this cause be, and the same hereby is, vacated and set aside, and that the defendants recover from the plaintiff their costs herein expended, taxed at $150."

There was a motion for a new trial, which was overruled and the case brought here for review.

At the time of the assessment and levy of the tax complained of in the foregoing petition the assessor was required to visit every person owning or holding any property in the precinct for which he was assessor and list the name of the party and demand from him a correct list of the taxable property owned by him, and the party so requested to schedule his property was by the law required to give a full, true, and correct statement of his taxable property, such list to be signed and sworn to by him. This list or schedule was preserved, indorsed with the name of the person assessed and with all others received by such assessor, the whole number being arranged in alphabetical order, delivered to the county clerk and by him kept in his office. The assessor was also to enter the various lists of property in a book, giving the names of the parties in alphabetical order, and to return such book, verified by his affidavit as to correctness, etc., to the county clerk to be filed and kept in his office. Our law further provided for the equalization of taxes by the proper board, and after equalization, the transcribing, by the county clerk, of the

assessments of the several precincts, etc., into a suitable book, and from the list of names and charges entered in such book the collection of taxes was to be made. The above is a general statement of the effect of the several sections of the Compiled Statutes of Nebraska, 1887, chapter 77, under the head of "Revenue," of which we will not make specific citation by section, as the foregoing general statement will be sufficient for our purposes here. We desire to call attention more particularly to the facts that the list or schedule, required of the taxpayer and to be signed and sworn to by him, is the initial or starting point of the assessment, is copied into the assessor's book, indorsed with the name of the person assessed, and after the assessor has verified this book as a correct list of names of persons from whom schedules have been received or taken, together with such book, is delivered to the county clerk and filed in his office and there kept; that the tax list prepared by the county clerk and turned over to the treasurer is a transcript of the assessor's book and the book a copy of the schedules. From this we gather that unless, for some reason, a change has been made or an error occurred, the property will be charged in the tax list against the one whose name is signed to and who has verified the schedule. On this point there was evidence introduced on the trial below tending to show that the schedule in this case was headed "The Harlem Cattle Company," and was signed "Harlem Cattle Company, by W. J. McGillin, Manager," or "W. J. McGillin, for the Harlem Cattle Company." On the other hand, there was testimony that the schedule was one purporting to list, or by its terms listing, the individual property of W. J. McGillin, and signed and sworn to by him in his individual capacity, and not as manager for the company as before stated. The original schedules were not produced at the trial. One witness states: "We had a fire soon after that, burning the buildings down containing the records, and the original schedule is sup-

posed to have been burnt in that fire.    It was only a few
days before that, I think, that we got that copy."    After a
full and careful consideration of all the evidence in the
case, we conclude that it establishes the facts that the sched-
ule was, on its face, a list of the individual property of W.
J. McGillin, and as such was signed and verified by him
personally and without referring in any manner to his being
manager of the Harlem Cattle Company; that the assess-
ment book was copied from the schedule and the tax lists
transcribed from the assessor's book or the schedule, or pos-
sibly by referring to both, and was thus constituted from
the information furnished by the party who would now be
heard to complain.    Hence, the officer who prepared the tax
list was warranted in entering the tax against McGillin;
indeed, he could not do otherwise.    We conclude that the
appellant stands in no position to ask the court to set aside
or enjoin that which springs from his own voluntary act.
He made the statement upon which the officers proceeded,
was taxed accordingly, and the fault, if any, was his.
( *Winfield Bank v. Nipp*, 28 Pac. Rep. [Kan.], 1015; *Hub-
bard v. Winsor*, 15 Mich., 146.)

The appellant failed to make out such a case as calls upon
a court to enjoin the collection of the taxes in question on
the ground of their being illegal or unauthorized.    To hold
otherwise would make the tax field a much larger one than
it now is for the exercise of the industry of the courts and
counsel, and would introduce into the collection of the pub-
lic revenues an element of uncertainty and allow the pro-
ceedings and lists, through which they are evidenced and
collected, to be questioned in a manner which would not
nearly be compensated by the justice and equity possibly
thereby effected in some individual or particular instances
or cases.

There were some other questions raised and discussed
in the briefs of counsel, but as the foregoing decision of
one question will dispose of the case, we do not think it

necessary to take up any of the other matters. The findings and judgment of the lower court were right and are

AFFIRMED.