[Civil No. 831.  Filed March 26, 1904.]

[76 Pac. 602.]

## J. M. MOLINA et al., Defendants and Appellants, v. W. D. LUCE et al., Plaintiffs and Appellees.

1. EVIDENCE—MAPS—DATA—VALUE.—A map of mining ground made from the discovery of monuments at certain points, none of which were known to the surveyor, and none of which, except those of the Blanca claim, were found by him from following the calls of any location notice or the field-notes of any former survey, but were pointed out to him, to use his expression, ''by some of the other fellows'' who were with him, who were not shown to be the persons who built them or who knew them to be the monuments they represented them to be, is valueless for any purpose except to give the location of the Blanca claim.

2. APPEAL AND ERROR—FINDINGS—EVIDENCE—CONFLICT.—Where there is a conflict of evidence and the record affords substantial evidence to support the finding of the trial court, such finding will not be interfered with or set aside on appeal.

3. MINES AND MINING—EJECTMENT—MINING CLAIMS—LOCATION—POSSESSION—ACTUAL—CONSTRUCTIVE—OUSTER—REV. STATS. ARIZ. 1887, PARS. 3135, 3137, 3139, CITED AND CONSTRUED.—Under paragraph 3135, *supra,* providing that ejectment may be maintained where plaintiff is legally entitled to possession of the premises, and paragraphs 3137 and 3139, *supra,* providing it shall be sufficient for plaintiff to plead and prove that he is entitled to the possession of the premises and that the defendant dispossessed him before the commencement of the action, the plaintiff being in possession of a mining claim under a lease and claiming possession to the boundary-lines, wherever they might be, was in constructive possession of the entire claim, and the entrance by defendants on a part of it which he did not actually occupy, owing to his lack of knowledge as to the exact boundary, was an ouster entitling him to maintain ejectment.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yuma.  Edward Kent, Judge.  Affirmed.

The facts are stated in the opinion.

H. C. Davis, and Smith & Ives, for Appellants.

Paragraph 3137 of the Revised Statutes of 1887 provides that plaintiff in an action of ejectment must allege that the defendant "before the commencement of the action, entered into and dispossessed him of the premises." An act of dispossession plainly implies prior possession in the plaintiff.

It would be impossible for the defendant to dispossess the plaintiff unless the plaintiff had previously been possessed of the premises. The unlawful withholding of the possession of the premises from the plaintiff is not of itself sufficient to sustain an action of ejectment under the Arizona law as it existed at the commencement of this action.

The law was changed by the Revised Statutes of 1901.

Paragraph 4112 of the Statutes of 1901 provides that "the complaint may state generally that the complainant is entitled to the possession of the premises and that the defendant unlawfully keeps him out of possession."

The requirement of the laws of 1887, that the defendant must enter and dispossess the plaintiff of the premises, was omitted in the Statutes of 1901.

This case was tried in March, 1902, after the Statutes of 1901 had gone into effect; and it was commenced in July, 1901, after the Statutes of 1901 had been enacted, but before they had gone into effect.

The supreme court of Arizona expressly held in 1894 that a prior possession by the plaintiff is essential to the maintenance of an action of ejectment. *Board of Regents* v. *Charlebois,* 4 Ariz. 252, 36 Pac. 32.

In affirming a judgment in favor of the defendant in that case, the court held: "While the evidence does not show that the appellee went into possession, the pleadings do show that she was in possession at the time the suit was commenced. It it not necessary that we should consider the many questions urged as errors by appellant, inasmuch as from the record the judgment must be affirmed, as it was necessary for appellant to show *an actual possession and that it had been ousted* before it can recover."

This case is on all-fours with the present appeal, and should be conclusive of it. *Lotz* v. *Briggs,* 50 Ind. 346; *Hurst* v. *Sawyer,* 2 Okla. 470, 37 Pac. 817.


Pierce Evans, and Charles A. Mau, for Appellees.

DOAN, J.—This is an action of ejectment brought on July 8, 1901, for the possession of a mining claim in the Castle Dome mining district, known as the Newe Dil, called also the New Deal, located on October 15, 1890. The appellants in their verified answer claimed the ground in dispute by virtue of a deed to the Blanca mining claim, located April 23, 1900. From a judgment for plaintiffs, and the denial of a motion for a new trial, the defendants appealed, and present to the appellate court two propositions: 1. That the undisputed evidence in the case established that the premises in dispute were outside of the boundaries of the New Deal, and therefore the Blanca, the property of the defendants, was a valid location, having been located upon unappropriated public ground; and 2. That there is no allegation or proof of possession of the premises in the plaintiffs prior to the institution of the suit and of ouster by the defendants, which is necessary to sustain a judgment based upon a complaint in ejectment under the law in force at the time suit was brought.

Appellants allege that the court erred in finding that the "Blanca lode mining claim encroaches upon and embraces within its boundaries a portion of the property of the said Newe Dil mining claim, as follows, to wit: Said claim commences at a stone notice monument which is the northerly end center monument thereof, and which said monument or point is the southeasterly end center monument of the Castle Dome mine, surveyed March 2, 1876, for James M. Barney, as shown by the records of the United States surveyor's office. . . . That all that portion of the said Blanca lode mining claim which lies southeasterly of the said Castle Dome mining claim, or the said southeasterly end center monument thereof, is a part and parcel of the said Newe Dil mining claim"—for the reason that there is no evidence to sustain such finding. The facts bearing on this question, as disclosed by the record, are substantially as follows. The Hopkins claim was located December 11, 1871, and claimed eight hundred feet on the Buckeye ledge, the notice recorded in Castle Dome district and the public records of Yuma County. The Norma claim was located January 1, 1876, one thousand feet on the Buckeye ledge, Castle Dome district, Yuma County, commencing at the north monument of the Caledonia, and running thence in a northeasterly direction one thousand feet to the southern monu-

ment of the Hopkins claim. The Castle Dome mine was sur-
veyed for patent on March 2, 1876, two thousand feet in length
by two hundred feet in width, running northwesterly and
southeasterly, the south end center monument of said Castle
Dome mine being located three hundred and .seventy-nine feet
north, 22° 15' east, from the initial point for mineral surveys
in the Castle Dome mining district, established in the patent
to the Flora Temple mine granted by the United States on the
twenty-sixth day of April, 1875, according to the field-notes
in the United States surveyor-general's office. No evidence
of its location appears in the record. The Newe Dil was located
October 15, 1890, being fifteen hundred feet, "commencing
at this stone notice monument, which is the northwesterly end
of said claim, and running thence fifteen hundred feet in a
southeasterly direction to a stone monument," situated in the
Castle Dome mining district, county of Yuma, Arizona Ter-
ritory. "This claim is bounded on the northwesterly end by
the Barney claim, and on the southeasterly end by the claims
formerly known as the Caledonia and formerly known as the
Norma mine." The Blanca was located April 23, 1890; length
of claim eight hundred feet, four hundred feet in a southerly
direction, and four hundred feet in a northerly direction, from
the center of the discovery shaft, lengthwise of the claim,
together with one hundred feet in width on each side of the
center; general course from north to south; "situated and
located in Castle Dome mining district, in Yuma County, ter-
ritory of Arizona, in the east side of the Flora Temple, and in
the north end of the Norma mine." It appeared in evidence
that the Castle Dome claim was patented by one James M.
Barney, and was generally spoken of throughout that district
as the Barney claim or mine. The judge of the district court
having credited plaintiff's testimony upon that question, so far
as this appeal is concerned it is conceded by the appellants
that the certificate of the location of the New Deal will be
considered as reading, "This claim is bounded on the north-
erly end by the Castle Dome mine." It is contended by the
appellants that the premises in dispute were located between
the northwesterly end of the New Deal and the southeasterly
end of the Castle Dome, the Blanca claim having been located
with the south center end of the Castle Dome near its center,
about half of it overlapping that patented mine, and the other

half being located on the unoccupied ground between the northwestern end of the New Deal and the southeastern end of the Castle Dome.  The plaintiffs, however, maintain that, there being no vacant ground at that point, the Blanca was an utterly invalid location, having been located in 1900, about half of it on the Castle Dome mine, patented in 1876, and the rest of it on the northwestern end of the New Deal claim, located in 1890.  A survey of the premises was made by a deputy mineral surveyor, who started from the initial point for mineral surveys in that district, and traced the lines and monuments of the two patented claims, the Flora Temple and the Castle Dome, finding the lines and corners as designated in the field-notes.  He then made a survey of the New Deal, finding the two end center and four corner monuments of that claim substantially as described in the location notice, the southeasterly end monument being 1,392 feet southeast of the southeasterly end of the Castle Dome, with an old monument about two feet south of it that would answer for the northern monument of the Caledonia.  A map made from the field-notes of this survey was introduced in evidence.  A survey of the premises was made by the defendants, giving the location of the monuments and boundaries of the Blanca claim, but was started without any reference to the initial point for surveys in that district, and without any discovery or location of any of the monuments or boundaries of either of the patented mines.  A map made from this survey was introduced in evidence by the defendants.  This map includes a plat of the New Deal claim, the south end of the old Norma, the south end of the Castle Dome, and the south end of a supposed Barney claim, that was referred to in the testimony of some of the witnesses for the defendants, but of which no location notice was ever found or placed of record.  These claims were placed upon the map from the discovery of monuments at certain points, none of which were known to the surveyor, and none of which, except those of the Blanca, were found by him from following the calls of any location notice or the field-notes of any former survey, but were pointed out to him, to use his expression, "by some of the fellows" who were with him.  In no instance does he give the name of the persons who pointed out the monuments, nor does he state in his testimony that such monuments were pointed out by persons who

IX  Ariz.—3

built them or who knew them to be the monuments they repre-
sented them to be. Such being the case, this survey is abso-
lutely valueless for any purpose except to give the location
of the Blanca claim, and, if the finding of the trial court that
the Blanca was an invalid location by reason of none of the
ground on which it was located being unappropriated public
ground at the time of the attempted location is found to be
supported by the evidence in the case, the location of the
Blanca will be immaterial.

The record on which the appellants base the alleged error
in the finding under consideration is the testimony of wit-
nesses as to statements made by Vomocil, the locator of the
New Deal and the grantor of the appellees in this case. This
testimony is all directed to statements relative to the north
monument of the Norma, and is not necessarily irreconcilable
with the finding referred to. These were all conversations held
by illiterate men, who were unacquainted with the lines or
boundaries of the claims in that district, and were had ten or
twelve years prior to the trial of the case. In all of them
reference is made to the north end of the Norma. They are
assumed to be contradictory to the evidence of the plaintiffs,
and inconsistent with the finding of the court, by the assump-
tion that the north end of the Norma was identical with that
of the New Deal. The conversations were referred to as having
occurred about the year 1890, 1891, or 1892, but in every in-
stance the witnesses used the term "Norma" when referring
to the claim. Some of them speak of the "Old Norma," and
from the language of the witnesses it is not clear whether there
was an old Norma and a new Norma prior to the location of
the New Deal, or whether they refer to the New Deal as the
new Norma. An examination of the record satisfies us that
the monument referred to by Vomocil in these conversations
was the north monument of the Norma claim, and, as the south
end of the New Deal is identical with the south end of the
Norma,—viz. the north end of the Caledonia,—and the New
Deal claim is fifteen hundred feet in length, while the Norma
claim was only one thousand feet in length, four or even five
hundred feet of vacant ground northwest of the Norma could
have been covered by the location of the New Deal before the
location of the Blanca, and this evidence, if accepted and given
credence, would be entirely consistent with the finding of the

court. This presenting a question of conflicting evidence, and the record affording substantial evidence to support the finding of the trial court, we shall, in accordance with the rule invariably followed by appellate courts in such cases, decline to interfere with or set aside such finding.

In support of the next proposition, appellants claim that the court erred in finding "that before the commencement of this action, to wit, on or about the 10th day of January, 1901, plaintiffs were rightfully in possession of the said Newe Dil mining claim, and claimed the right to occupy and possess the said premises, and that on said last-mentioned day the defendants wrongfully entered into and upon the said claim and dispossessed the plaintiffs, and have ever since unlawfully withheld from the plaintiffs the possession of a portion of said Newe Dil mining claim as hereinafter described," for the reason that there is no evidence to sustain such finding.

The law prior to September, 1901, under which appellants insist actual possession and ouster must be averred and found, read as follows (Rev. Stats. 1887) :—

"3135. (Sec. 4.)  The action of ejectment may be maintained in all cases where the plaintiff is legally entitled to the possession of the premises. . . .

"3137. (Sec. 6.)  It shall be sufficient for the plaintiff to state in his complaint that on a certain day named therein he was entitled to the possession of the premises . . . and the defendant on a day named in the complaint afterwards, and before the commencement of the action entered into and dispossesed him of such premises and unlawfully withholds from the plaintiff the possession thereof. . . .

"3139. (Sec. 8.)  It shall be sufficient to entitle the plaintiff to recover to show at the time the action was commenced, the defendant was in possession of the premises claimed, and that the plaintiff had a right to the possession thereof."

In support of their position on this question, appellants cite from the testimony of the plaintiff, in which he says, "I was in occupation of the ground covered by the certificate, all but the 400 feet there," and at another point, "I was in possession of all but 400 feet of this mine." They then cite from the testimony of defendants' witnesses statements of Vomocil, made about the year 1890, in which he speaks of the ground lying north of the Norma as being vacant ground that might

be taken up by some of those parties. It is possible that Vomocil at the times mentioned was occupying the ground under the Norma location. If so, the ground referred to was probably vacant, as the old Hopkins claim may, prior to that time, have been abandoned, but it is likewise possible that, within a short time after such conversations, Vomocil, by the location of the New Deal, which extended five hundred feet farther north, covered the ground that was unoccupied at the time he made these statements; and the plaintiff Luce, while he stated that he was occupying the ground, except that four hundred feet, likewise testified in the same connection: "Q. Have you ever been in possession of that whole four hundred feet?—A. I always thought I was in possession until them fellows went to work there.—Q. Then you have never been in possession of that four hundred feet, have you?—A. I supposed I was. I was showed that ground, and I supposed that it was on the ground that belonged to me that I had leased.—Q. In this complaint you stated you were wrongfully ejected from those four hundred feet. Is that a fact?—A. I considered I was wronged when they were working my ground." The plaintiff testified that he was in possession, under a lease, of the New Deal mining claim and several others when the defendants started in to do the work complained of; that he had been in possession continuously for about three years, and had taken out and shipped about fifty thousand dollars' worth of ore during that time from the leased premises; that he felt sure that these men were working on his ground, but did not make claim to it, because he did not know where the end of the Barney claim was; that, as soon as he found from the survey where the end of the Barney claim was, he claimed the ground, notified the parties, and proceeded against them. The fact is not contradicted that he was in possession of the New Deal mining claim at the time, and claimed possession to the boundary-lines thereof wherever they might be as determined by the monuments, intending to hold, and supposing that he was holding, possession to the southeastern end of the Castle Dome as his northwestern boundary-line; and if he was not in the actual pedal possession of the four hundred feet at the northern end, by reason of the fact that he did not know where the New Deal stopped and the Castle Dome mine began, he was nevertheless in actual possession of part of the

New Deal, and in such constructive possession of all of it as would render the entrance by the defendants upon any part of it that might then not be actually occupied by him, by reason of his not knowing the location of the dividing line between it and the adjoining mine, an ouster. The allegations of the complaint, and the evidence as presented in the record, are sufficient to support a judgment under the law as it existed at the time suit was brought.

The judgment of the district court is affirmed.

SLOAN, J., and DAVIS, J., concur.