## Commonwealth *v.* Simala, Appellant.

220

Argued October 3, 1968. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Dino S. Persio,* with him *William K. Eckel,* for appellant.

*Ferdinand F. Bionaz,* District Attorney, with him *William P. Kelly,* First Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 23, 1969:

On the morning of March 1, 1967, the body of Thomas Serenko was found on a country road near the Borough of Portage in Cambria County. An investigation of

the crime was begun by a Corporal Pelesky of the State Police and two other officers. An autopsy performed on the body of the deceased revealed that the cause of death was a bullet wound from a .22 caliber gun.

Some time during the day Corporal Pelesky received a report that appellant had been seen with a .22 revolver the previous day. Pelesky obtained a search warrant for a .22 revolver from Ralph George, who served as mayor and as justice of the peace of Portage. Armed with the warrant, Pelesky and two other officers arrived at appellant's home around 11:00 p.m. on March 1. When asked about the gun, appellant told Pelesky that he had given it to one Robert Kline. Pelesky then called the juvenile probation officer of Cambria County. Since appellant, seventeen years old at the time, was on probation as a juvenile offender, the officer told Pelesky to take him to the juvenile detention center for violating his parole by carrying a gun. Pelesky took appellant to the office of Mayor George in Portage; he did not take appellant to the detention center in Ebensburg because he first wanted to search Robert Kline's home in an effort to recover the gun that night.

Appellant remained with Mayor George while Pelesky and the two officers went to Kline's home. While appellant was sitting in Mayor George's office three other persons were present; Mayor George and two police officers from another municipality who were entirely unconnected with the murder investigation or the search for the .22 revolver. About a half hour after appellant was brought to the mayor's office, Mayor George asked him about the gun, and appellant told him that he got the gun from a person named Ralph who lived in Johnstown.

That which then ensued is critical to the question of the admissibility of an oral statement made by

appellant. All three persons testified substantially to the same effect as to what took place, and appellant's version does not seriously dispute it. The mayor and the two police officers were carrying on a conversation between themselves, and Mayor George looked over toward appellant, who was "sitting there with his head down and looked out of this world." Mayor George said: "What's the matter, Mike, you look kind of down in the dumps; do you want to talk? He [appellant] said, I want to, but I can't. I said, well, if you want to talk, talk." At that point appellant orally confessed to having killed Serenko. Mayor George then notified police officers who were in an adjoining room, and thereafter a written statement which was not introduced into evidence was taken from appellant after he had been warned of his *Miranda* rights for the first time.

At a pre-trial suppression hearing appellant attacked the admissibility of the oral statement given in Mayor George's office, but the court below ruled that the oral confession was not the product of "custodial interrogation" and that, therefore, it was not necessary to warn the appellant of his *Miranda* rights before he volunteered the statement. Appellant was convicted of voluntary manslaughter and took this appeal.

This case is controlled by the statement of the Supreme Court of the United States in *Miranda* that: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,*

384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Since it is conceded that appellant was not given any warnings before the oral confession, the issue we must decide is whether appellant's oral confession was the product of "custodial interrogation."

The Commonwealth claims there was no "custodial interrogation" for three reasons: first, although appellant was in custody, he was not in custody for the crime to which he eventually confessed; second, the investigation of the murder had not focused on the appellant as a suspect; third, the questions asked by Mayor George did not amount to interrogation.

The first contention is answered by the United States Supreme Court's recent opinion in *Mathis v. United States*, 391 U.S. 1, 88 S. Ct. 1503 (1968). Mathis was questioned by an Internal Revenue Service agent while in jail serving a sentence for an unrelated offense about certain tax refunds Mathis had claimed the IRS agent did not give Mathis his *Miranda* warnings before questioning him. Information elicited from Mathis eventually led to a criminal prosecution and conviction for knowingly filing false claims. Mathis attacked the admissibility of statements he had given the agent. The government argued that there was no custodial interrogation since Mathis was in custody for an offense unrelated to tax evasion. The Supreme Court summarily rejected this argument: "We find nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody. In speaking of 'custody' the language of the Miranda opinion is clear and unequivocal: 'To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.' 384 U.S. at 478." 391

U.S. at 4-5, 88 S. Ct. at 1505. In short, as soon as a defendant is placed in custody for any reason, he must be given his *Miranda* warnings before he is interrogated. We have no doubt that, while appellant was in Mayor George's office, he was "in custody" within the meaning of such phrase in *Escobedo* and *Miranda* and that he was entitled to be given the *Miranda* warnings before being questioned by the police.

The Commonwealth maintains that there is a second factor we must consider—whether the investigation of the murder had begun to focus on the appellant. This requirement is derived from *Escobedo v. Illinois,* 378 U.S. 478, 490-91, 84 S. Ct. 1758, 1764-65 (1964) : "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but *has begun to focus on a particular suspect,* the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment. . . ." (Emphasis added.) See *Commonwealth v. Jefferson,* 423 Pa. 541, 545-46, 226 A. 2d 765, 768 (1967). The Supreme Court clarified this particular holding in *Miranda:* "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]" Footnote 4 states, "This is what we meant in Escobedo when we spoke of an investigation which had focused on an accused." 384 U.S. at 444, 86 S. Ct. at 1612. We interpret this to mean, in conjunction with *Mathis,* that when an individual is placed in custody for any reason, he cannot be interrogated with-

out first being advised of his rights regardless of whether the investigation has focused on him as a suspect in a particular crime. The focusing test continues to be relevant in determining whether an individual is in custody, see *Jefferson,* supra.

Very recently, this Court in *Commonwealth v. Feldman,* 432 Pa. 428, 248 A. 2d 1 (1968), said: "From reading Escobedo and Miranda together it becomes clear that whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in Miranda [citing authorities]." Thus we need not decide whether appellant was at the time of the incident in the mayor's office the focus of an investigation because appellant was clearly occupying an "in custody" status.

Finally the Commonwealth argues that appellant's statement was purely voluntary and thus not within the proscription of *Miranda.* See *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S. Ct. 1602, 1630 (1966); cf. *Commonwealth v. Feldman,* supra; *Commonwealth ex rel. Vanderpool v. Russell,* 426 Pa. 499, 233 A. 2d 246 (1967); *Commonwealth v. Eperjesi,* 423 Pa. 455, 224 A. 2d 216 (1966).[1] However, this is not a case where appellant, unencouraged, began to blurt out his confession. Although appellant may have been thinking of confessing, something was making him think that he should not, and the first move was made not by him but by the mayor who *urged* appellant to "talk." This should be sufficient to necessitate *Miranda* warnings. Once the mayor said "you look kind of down in the dumps

---

[1] The appellants in *Vanderpool, Eperjesi* and *Feldman* were not "in custody" or deprived of their freedom of action in any significant way at the time appellants made the statements. In the case at bar, appellant was "in custody" when he made the statement.

. . . if you want to talk, talk," he should have also been obligated to inform appellant of the consequences of any statement and of his constitutional right to remain silent and to be assisted by counsel. "[I]t is not simply custody plus 'questioning,' as such, which calls for the Miranda safeguards but custody plus police *conduct* [here the mayor's conduct] calculated to, expected to, or likely to, evoke admissions." Institute of Continuing Legal Education, "Criminal Law and the Constitution—Sources and Commentaries" 356 (1968) (Emphasis in original).

It simply is not enough to mechanically attempt to ascertain what "interrogation" means without considering the rationales behind *Miranda* and the fifth and sixth amendments. Our basic theory of criminal law is that an accused should be assisted by counsel and should not be convicted by evidence from his own mouth. *Miranda* simply requires that an accused be told of his rights. It in no way precludes the use of voluntary confessions, but merely requires the giving of certain warnings so that an accused can make a knowledgeable decision whether to confess. The requirement of "interrogation" is designed to permit the use by the prosecution of a confession that is given by an accused *without any prompting,* before warnings can be given.[2]

That is hardly the situation here. The mayor knew exactly for what appellant was being held, having issued the search warrant for the gun sought as the murder weapon, a gun which the police were informed had been in appellant's possession. Appellant never

---

[2] Even where an accused blurts out a confession, *Miranda* warnings at least should be necessary before any questions are asked that do anything more than clarify statements already made. See Institute of Continuing Legal Education, "Criminal Law and the Constitution—Sources and Commentaries" 354 (1968).

suggested that he might want to confess until the mayor said "you look kind of down in the dumps; do you want to talk . . . if you want to talk, talk." This certainly was not an innocent attempt on the part of the mayor to strike up a friendly conversation to help appellant pass the time until the police returned from their search. There is no difference for constitutional purposes between questioning an accused outright and more subtly suggesting that he incriminate himself without being asked specific questions. Had appellant been asked "did you do it?" *Miranda* warnings would be necessary. There is no reason why they should not also be required where the question is "will you talk?" Talk about what? The implication clearly was that appellant had committed the crime and would feel better if he confessed. In our view, any question likely to or expected to elicit a confession constitutes "interrogation" under *Miranda*. The question here was clearly of this type, and thus we believe that appellant is entitled to a new trial.[3]

---

[3] The Supreme Court of the United States has recently indicated that it will not allow the prosecution to draw fine lines in order to deny prisoners the rights guaranteed by *Miranda*. In *Orozco v. Texas*, 394 U.S. 324, 27 L.W. 4260 (1969), the Court rejected the argument that because a suspect was interrogated in his own room, not in the station house, he was not entitled to *Miranda* warnings, holding that although a suspect is likely to be under increased pressure when questioned in the station house, this is not essential to his right to not make self-incriminatory statements. Likewise here, although appellant may have felt more secure with the apparently friendly questioning by the mayor than he would have were he undergoing formal police interrogation, the fact that the confession was elicited in this manner does not take this case without the scope of *Miranda*. In either event—just as in *Orozco*—the aim of the questioning was to gain incriminating information, and this is what triggers the need for *Miranda* warnings.

*Orozco* is relevant also for the caveat that the Court included, which applies equally to the case before us: "a reversal by this

228

We thus conclude that appellant's confession was admitted in violation of *Miranda*. In light of this decision, we need not pass on appellant's other contentions.

The judgment of the Court of Oyer and Terminer of Cambria County is reversed and a new trial is granted.

Mr. Justice MUSMANNO did not participate in the decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE JONES:

I agree with the views expressed in the majority opinion in the following respects: (1) that, at the time of appellant's oral statement, he was then "in custody" and that he was entitled to be given the *Miranda* warnings before being questioned; and (2) that the question whether appellant was at the time of the incident in the office of Mayor George the focus of an investigation does not require our consideration because appellant was then clearly occupying an "in custody" status. I disagree, however, with the view expressed in the majority opinion that appellant's oral statement was not a *volunteered* statement and the conclusion reached in the majority opinion that appellant's oral statement was admitted in violation of *Miranda*.

The key inquiry in the case at bar in determining the admissibility of appellant's oral statement is whether such statement was a purely *volunteered* statement or the result of an interrogation or questioning which should have been preceded by the *Miranda* warnings. If appellant's statement was a purely voluntary statement, then it is not within the proscription of

Court of a conviction based in part on unconstitutional evidence leaves the State free to retry the defendant without the tainted evidence." 394 U.S. at 327 n.4, 37 L.W. at 4261 n.4.

*Miranda.* See: *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S. Ct. 1602 (1966). Cf. *Commonwealth ex rel. Vanderpool v. Russell,* 426 Pa. 499, 233 A. 2d 246 (1967); *Commonwealth v. Eperjesi,* 423 Pa. 455, 224 A. 2d 216 (1966); *Commonwealth v. Feldman,* 432 Pa. 428, 248 A. 2d 1 (1968). If the latter, in the absence of any *Miranda* warnings, appellant's statement would be inadmissible.

In the resolution of this question we look to the record for that which transpired, and there is little or no dispute as to that which did transpire.

The remarks of Mayor George to appellant which preceded appellant's oral statement, even though inquisitive in nature, did not constitute an "interrogation" or a "questioning" of the nature contemplated by *Escobedo* or *Miranda* as a police "interrogation" or "questioning" which should have been preceded by warnings to appellant of his constitutional rights. Viewed in the totality of the circumstances present, appellant's oral statement was a purely voluntary statement and did not arise from an interrogation or questioning by police authorities.

The United States Supreme Court has not said that any statement volunteered by a person "in custody" in the absence of police interrogation or questioning, and in the absence of *Miranda* warnings, is inadmissible. Unless and until it be so held, I decline to declare a statement such as that volunteered by the instant appellant constitutionally infirm.

In my opinion, appellant's conviction was proper and should be sustained.

Mr. Chief Justice BELL joins in this dissent.