### Commonwealth v. Green

*Charles C. Brown, Jr.,* District Attorney, for Commonwealth.

*John R. Miller,* of *Miller, Kistler & Campbell,* for defendant.

CAMPBELL, P. J., May 30, 1973.—Prior to closing on the evening of January 18, 1973, Ellice A. Thompson, Security Coordinator for Hills Department Store, State College, Pa., noticed a package at the store's service desk which was not accompanied by a sales receipt. The name "J. King" was printed on the front of the package. Mr. Thompson then called Miss Janet King, an employe of Hills, to the manager's office to question her about the package.

A few minutes later Mr. Thompson paged defendant, Steven Green, also an employe of Hills, asking that he report to the manager's office. Defendant had been on duty at the service desk that evening. When asked if he had sold the package to Miss King, defendant replied that he had; but when confronted with Miss King's conflicting account, he made several statements exculpating Miss King and incriminating himself.

At the request of Mr. Thompson, defendant made a written statement of the incident, admitting that he had taken the merchandise. He also signed a form provided by Hills containing information about himself and the merchandise in question.

At no time prior or subsequent to making the oral and written statements was defendant given any of the standard "Miranda" warnings by Mr. Thompson.

As a privately employed security coordinator, Mr. Thompson had the duty and authority to detain persons, bring prosecutions, investigate irregularities, and enforce rules and regulations at his employer's store, primarily in relation to shoplifting.

Defendant now seeks to suppress both the oral and written statements on the ground that they were

elicited prior to any warning of his constitutional rights.

The sole issue raised is whether a security coordinator employed by a private business establishment is required to advise an individual of his constitutional rights before questioning him with respect to a possible theft of merchandise.

## DISCUSSION

The requirements of Miranda are specific in providing:

" [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way": Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966).

By the very definition of "custodial interrogation" employed by Miranda, the required warnings must be given prior to questioning by law enforcement officers. Similarly, where a private person becomes an instrumentality in the plan of police authorities to interrogate the accused, defendant must be advised of his constitutional rights: Commonwealth v. Bordner, 432 Pa. 405, 247 A. 2d 612 (1968).

Beyond this point, the law in Pennsylvania is unclear as to what other persons are required to inform a defendant of his constitutional rights prior to questioning him. Defendant seeks to expand the holding of Miranda, supra, to include inculpatory statements

made while in the custody of a private security co-ordinator who admittedly gave defendant none of the so-called "Miranda" warnings.

Our research disclosed no Pennsylvania cases directly on point. The following two cases are advanced by defendant in support of his position. In Commonwealth v. Simala, 434 Pa. 219, 252 A. 2d 575 (1969), a search warrant was issued in connection with a murder investigation for a revolver believed to be in defendant's possession. Although the search did not disclose the gun, defendant told the officers that he had given it to another. Defendant was taken to the office of Ralph George, who served as mayor and justice of the peace; Mr. George had previously issued the search warrant for the gun. In response to questioning by Mr. George, defendant made an oral and later a written confession to the murder. The Pennsylvania Supreme Court granted defendant a new trial on the basis that the confessions were inadmissible, since defendant had not been advised of his constitutional rights prior to being questioned by Mr. George.

The court seemed to equate the mayor's conduct with that of law enforcement officers necessary to require the "Miranda" safeguards (434 Pa. at 226); however, aside from this brief statement, the court did not address itself directly to the mayor's connection or lack thereof with law enforcement officers within the meaning of "Miranda."

In United States v. Goldsmith, 274 F. Supp. 494 (E.D. Pa., 1967), defendant was observed by postal inspectors removing the original address label from a parcel and substituting another. He was then apprehended by a postal inspector and given a mimeographed form setting forth his constitutional rights prior to questioning. The precise question presented to the court was the sufficiency of the warnings given. As in Simala,

supra, the court did not discuss whether a postal inspector is to be considered a "law enforcement officer" within the meaning of "Miranda," or whether one other than a law enforcement officer must give the warnings prior to questioning.

In support of the position that a private security officer need not give "Miranda" warnings to a suspect prior to questioning, the Commonwealth cites United States v. Antonelli, 434 F. 2d 335 (2d Cir., 1970). There defendant was stopped at the gate of Pier 90 in New York City by a gateman employed by a private detective agency to guard the pier on behalf of the Italian Line. Upon request, defendant submitted to a routine search of his car which disclosed several thousand dollars worth of recently imported merchandise. On appeal, defendant contended that certain incriminating statements made to the gateman should have been excluded because he had not been advised of his constitutional rights by the security guard. Assuming, arguendo, that defendant had been in custody and that the statements were not spontaneous, the court squarely faced the issue of whether security personnel employed by private individuals are required to give a suspect constitutional warnings prior to questioning. The court concluded, at pages 337-38, that, "since appellant's statements were made to persons not law enforcement officers or their agents, there was no police or 'custodial interrogation' within the meaning of Miranda, and that no warning need have been given." Accord, United States v. Wilkinson, 460 F. 2d 725 (5th Cir. 1972) (private investigator); 31 A. L. R. 3d 565, sec. 24 at 666, 1970.

In addition to interpreting "Miranda" to require interrogation by law enforcement officials, the court noted an important limitation on the guarantee of the Fidth Amendment, "the Fifth Amendment, like the

Fourth Amendment, has long been construed as 'a restraint upon the activities of sovereign authority' and not as 'a limitation upon other than governmental agencies' ": 434 F. 2d, at 337. According to the court, a private security guard stands no differently from the private citizen who has employed him, and thus the Fifth Amendment is not a limitation on his actions.

Several State courts have ruled upon the issue presented by this case and the almost unanimous holding has been that "Miranda" warnings are not required to be given by private individuals or persons within their employ.

"Miranda" warnings are not required by security guards employed by a county hospital. The test to be applied is "whether [they are] employed by an agency of government, federal, state or local, whose primary function is to enforce the law": People v. Wright, 57 Cal. 781 (1967).

In People v. Frank, 275 N.Y. Supp. 2d 570, 52 N.Y. Misc. 2d 266 (1966), defendant, an employe of a department store was detained and questioned by security guards due to suspicion of theft. The court held that the security guards were not law enforcement officers and thus not required to give "Miranda" warnings.

Warnings are not required to be given by a security officer employed by a mercantile establishment: State v. Bolan, 27 Ohio St. 2d 15, 271 N.E. 2d 839 (1971).

Other cases are in accord: People v. Walker, 105 Cal. 672 (1972), psychiatrist employed by district attorney; State v. Archuleta, 482 N.M. 378, 482 P. 2d 242 (1971), private insurance investigator; State v. Hess, 9 Ariz. 29, 449 P. 2d 46 (1969), private individuals; State v. Valpredo, 450 P. 2d 979 (Supreme Ct. Wash. 1969), confession made to fellow store employe; State v. Lombardo, 104 Ariz. 598, 457 P. 2d 275 (1969), security officer, private department store; State v.

Bolan, 27 Ohio St. 2d 15, 271 N.E. 2d 839 (1971), mercantile employe; People v. Omell, 15 Mich. 154, 166 N.W. 2d 279 (1969), private investigator; People v. Morgan, 24 Mich. 660, 180 N.W. 2d 842 (1970), security officer of department store; State v. Thomas, 111 N.J. Super. 42, 266 A. 2d 614 (1970), welfare investigator; People v. Wright, 57 Cal. 781 (1967), security guard at hospital; State v. Kelly, 61 N.J. 283, 294 A. 2d 41 (1972), security guard, private business; People v. Williams, 281 N.Y. Supp. 2d 251, 53 N.Y. Misc. 2d 1086 (1967), security guard, Sears, Roebuck and Company.

## CONCLUSION

The overwhelming authority from other jurisdictions supports the position that "Miranda" warnings need not be given by a private security officer prior to questioning a suspect taken into custody. This Commonwealth has never squarely decided the issue. We believe that Simala and Goldsmith cases, supra, are distinguishable. Believing as we do that the guarantees of the Fifth Amendment are intended as limitations upon a governmental activities and not on private individuals, then the "Miranda" warnings need not be given by persons other than governmental officials or their agents.

We, therefore, enter the following

## ORDER

And now, May 30, 1973, defendant's motion to suppress is refused.