J-A26002-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARSHA C. GREEN, | |
| Appellant | No. 994 WDA 2017 |

Appeal from the Judgment of Sentence Entered April 10, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005745-2016

BEFORE: BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          FILED FEBRUARY 19, 2019

Appellant, Marsha Green, appeals from the judgment of sentence of 30 days' incarceration, imposed following her conviction for two counts of driving under the influence (DUI) and related offenses, including driving an unregistered vehicle. Appellant challenges, inter alia, the trial court's order denying suppression of a statement she made while ostensibly subject to a custodial interrogation. After careful review, we reverse the trial court's order denying suppression, vacate the judgment of sentence in part, reverse in part, and remand for further proceedings.

The trial court summarized the facts adduced at trial as follows:

On February 19, 2016 at approximately 4:40 a.m., Pennsylvania State Trooper Timothy Schonbachler was dispatched to the scene of an automobile accident on Interstate 376 near the Boulevard of the Allies in the City of Pittsburgh. The vehicle had been abandoned in the left lane of the interstate. Trooper

Schonbachler had received word that the occupants of the vehicle were not at the scene of the accident but had been located within a half mile of the accident scene. Both of these people had been observed walking on the Boulevard of the Allies, a busy thoroughfare in the City of Pittsburgh, not far from the accident scene. When Trooper Schonbachler arrived at the accident scene, he observed that the vehicle was positioned against the concrete barrier adjacent to the left lane of the interstate. The front left tire had been dislodged from the axle and there was heavy damage to the front of the vehicle. The driver's seat was in a forward position as though a smaller person had been driving. Trooper Schonbachler began to obtain information concerning the make, model and the registration for the vehicle. After receiving information that [Appellant] and another person were in the company of City of Pittsburgh police officers on the Boulevard of the Allies, Trooper Schonbachler responded to that area.

Upon arriving to that area, Trooper Schonbachler approached [Appellant]. [Appellant] is less than five feet tall. The other person with her, a male, was very large. [Appellant] was placed into the back of Trooper Schonbachler's vehicle and he asked her what had happened. He did not place handcuffs on her and she was not taken into custody. Trooper Schonbachler did not "Mirandize" [Appellant].[1] [Appellant] advised Trooper Schonbachler that she was driving her friend home and she thought she "blew a tire." She recalled hitting the concrete barrier. She told Trooper Schonbachler that she injured her leg during the accident and Trooper Schonbachler's personal observations confirmed the injury. After [Appellant] made these statements, Trooper Schonbachler detected an odor of alcohol emanating from [her] breath and person. He noticed her speech was slurred and she had bloodshot eyes. As a result, he asked her whether she had been drinking before the accident. [Appellant] responded that she had ended her employment that night around 11:00 p.m. She went to a bar and had been drinking alcohol until the she left the bar prior to the accident. At this point, Trooper Schonbachler took [Appellant] to the hospital so she could be treated for her injuries. The parties stipulated that Trooper Schonbachler continued to observe additional signs of impairment and signs of intoxication. The parties further stipulated that Trooper Schonbachler would have testified at trial that, based on his training and experience, [Appellant] was

_____

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

intoxicated to a degree that rendered her incapable of safely operating a motor vehicle on the morning of the accident. [Appellant] was placed under arrest at the hospital. No field sobriety tests were conducted.

Trial Court Opinion (TCO), 1/22/18, at 2-3.

On August 24, 2016, the Commonwealth Charged Appellant with 1) DUI, 75 Pa.C.S. § 3802(a)(1); 2) DUI, 75 Pa.C.S. § 3802(a)(1); 3) driving an unregistered vehicle, 75 Pa.C.S. § 1301(a); 4) driving while operating privilege is suspended or revoked, 75 Pa.C.S. § 1543(b)(1); 5) required financial responsibility, 75 Pa.C.S. § 1786(f); 6) driving on roadway laned for traffic, 75 Pa.C.S. § 3309(1); 7) careless driving, 75 Pa.C.S. § 3714(a); and 8) immediate notice of accident, 75 Pa.C.S. § 3746(a)(2).

Appellant filed a suppression motion, and the trial court denied that motion following a hearing held on December 1, 2016. On January 31, 2017, after a non-jury trial held before the Honorable Anthony M. Mariani of the Criminal Division of the Court of Common Pleas of Allegheny County,[2] the court convicted Appellant on all counts. On April 10, 2017, the court sentenced Appellant to 30 days' incarceration, five months' consecutive probation, and a $750 fine for DUI at count 1, which merged for sentencing purposes with the DUI conviction at count 2. The court also sentenced Appellant to a concurrent term of 30 days' incarceration, five months of restrictive intermediate punishment, and a $500 fine for driving while operating privilege is suspended or revoked. The court imposed no further

---

[2] The testimony from the suppression hearing was incorporated into the non-jury trial. See N.T., 1/30/17-1/31/17, at 15.

- 3 -

penalty for the remaining counts.  The court also ordered Appellant to have a drug and alcohol evaluation and to attend safe driving school.

Appellant filed a timely post-sentence motion on April 20, 2017, which was denied on June 6, 2017.  She filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued its Rule 1925(a) opinion on January 22, 2018.

Appellant now presents the following questions for our review:

I.     Did the trial court err in failing to suppress the statements that [Appellant] made to the police, as she was not informed of her Miranda rights prior to the custodial interrogation?

II.    Were [Appellant]'s rights under the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution and Article 1, § 10 of the Pennsylvania Constitution violated because she was charged and convicted of two separate DUI offenses, even though there was only one incident?

III.   Was the evidence insufficient to sustain the DUI convictions at counts 1 and 2 because the Commonwealth did not prove, beyond a reasonable doubt, that [Appellant] imbibed a sufficient amount of alcohol that she was rendered incapable of safely driving a vehicle?

IV.    Was the evidence insufficient to sustain the conviction for count 3[,] driving [an] unregistered vehicle, because the Commonwealth failed to prove, beyond a reasonable doubt, that the vehicle was not registered?

Appellant's Brief at 7.

We agree that the order denying suppression must be reversed; however, for ease of disposition, we will address that issue last.  See Commonwealth v. Coleman, 130 A.3d 38, 41 (Pa. Super. 2015) ("Since a sufficiency claim warrants automatic discharge rather than retrial, we address

that issue at the outset."); see also Commonwealth v. Smith, 568 A.2d 600, 603 (Pa. 1989) ("The question of sufficiency is not assessed upon a diminished record.").

In her second issue, Appellant argues that her double jeopardy rights were violated when she was convicted on separate DUI counts arising out of the same incident, based on this Court's recent decision in Commonwealth v. Farrow, 168 A.3d 207 (Pa. Super. 2017). As Appellant aptly explains in her brief:

> In Farrow, this Honorable Court found that where a single DUI offense is subject to enhancements (such as for an accident or a refusal), the Commonwealth must file a criminal information that sets forth a single count under 75 Pa.C.S.[] § 3802, and include enhancements under 75 Pa.C.S.[] § 3804 as subparts of that single count. 168 A.3d at 218-19. This Honorable Court explained that the Commonwealth must charge in this ma[nn]er rather than charging multiple counts of DUI under § 3802 when there is only incident of DUI. Id. Accordingly, in Farrow, this Honorable Court vacated all but one DUI conviction that arose from a single incident, and remanded so that the enhancements could be placed under the single DUI count. Id. at 219.
>
> Thus, under Farrow, this Honorable Court must vacate [Appellant]'s DUI conviction at Count 2, 75 Pa.C.S.[] § 3802(a)(1).... The [t]rial [c]ourt, in its Pa.R.A.P. 1925(a) opinion, recognized that such action is necessary. [TCO] at 12.

Appellant's Brief at 26. Indeed, the Commonwealth also concedes this issue. Commonwealth's Brief at 24. As the trial court and the parties agree, no further analysis of this claim is required, as relief is clearly warranted under Farrow in the circumstances of this case. Accordingly, we reverse Appellant's conviction for DUI at count 2.

Next, Appellant asserts that there was insufficient evidence to convict her for DUI.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

> Appellant argues that
>
> [u]nder these circumstances, the Commonwealth did not establish that the accident occurred because [Appellant] drove unsafely due to alcohol instead of other factors, such as sleepiness due to the time of day or the condition of the highway itself. As the Commonwealth did not provide sufficient evidence to establish that [she] drank enough alcohol to render her incapable of safe driving, this Honorable Court must reverse [Appellant]'s DUI convictions.

Appellant's Brief at 34. We disagree.

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's

> ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

Commonwealth v. Segida, 985 A.2d 871, 879 (Pa. 2009).

Here, Appellant crashed her vehicle, in an apparent single-vehicle accident, at approximately 4:00 a.m. She then abandoned that vehicle and set off on foot. She admitted to Trooper Schonbachler that she had been drinking, and he observed several signs of intoxication: her eyes were bloodshot, she smelled of alcohol, and her speech was slurred. These are the telltale signs of intoxication. Taken together, these circumstances would permit a factfinder to conclude that Appellant had violated the DUI statute.

However, Appellant argues that "it was impossible to say that alcohol caused the accident. Sleepiness, weather, lighting and the structure and conditions of the roadway all could have caused the accident." Appellant's Brief at 32. While we agree that absolute certainty is impossible to achieve, that is not the requisite standard for a criminal conviction. Instead, the standard is proof beyond a reasonable doubt. Moreover, all of the factors suggested by Appellant regarding other possible causes of the accident go to the weight, not the sufficiency of the evidence. Here, it was established that Appellant was drinking (both directly by her admission and through strong circumstantial evidence), that she crashed her vehicle in suspicious

circumstances, and that she fled the scene of that accident. Moreover, Trooper Schonbachler testified that "[b]ased on his observation[s] and training, ...[Appellant] was impaired to the level that she was incapable of safely driving a vehicle." TCO at 11. This evidence strongly suggests that her accident directly was related to her intoxication, and to the extent that some other circumstances suggested a non-criminal cause of the accident, the trial court was free to weigh that evidence and still conclude that Appellant had consumed a sufficient amount of alcohol to render her incapable of safe driving. Accordingly, we conclude that this claim lacks merit.

In Appellant's fourth claim, she argues that there was insufficient evidence to convict her of driving an unregistered vehicle. Both the Commonwealth and the trial court concede that this issue is meritorious. See Commonwealth's Brief at 37; TCO at 13 ("After reviewing the record, this [c]ourt agrees with [Appellant]. No evidence was presented at the trial that [her] vehicle was unregistered and the conviction for this violation of the vehicle code should be vacated."). Accordingly, we reverse Appellant's conviction for driving an unregistered vehicle.

Finally, we address Appellant's first claim, which concerns her admission to Trooper Schonbachler that she had been drinking. It is undisputed that she was not Mirandized before making that statement. Thus, Appellant contends that the statement should have been suppressed because she was subject to a custodial interrogation when she admitted to drinking prior to the accident.

However, the trial court found that Appellant was not in custody for Miranda purposes and, therefore, that her admission was not suppressible.

> A law enforcement officer must administer Miranda warnings prior to custodial interrogation. Commonwealth v. Johnson, 373 Pa. Super. 312, 541 A.2d 332, 336 (1988). The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Commonwealth v. Gwynn, 555 Pa. 86, ––––, 723 A.2d 143, 148 (1998). Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." Johnson, 541 A.2d at 336 quoting Miranda[], 384 U.S. [at] 444…. "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission." Id. quoting Commonwealth v. Simala, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969). When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings. Id.
>
> The appropriate test for determining whether a situation involves custodial interrogation is as follows:
>
>> The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate Miranda warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.
>
> Commonwealth v. Busch, 713 A.2d 97, 100 (Pa. Super. 1998) quoting Commonwealth v. Rosario, 438 Pa. Super. 241, 652 A.2d 354, 365–66 (1994) (en banc), appeal denied, 546 Pa. 668, 685 A.2d 547 (1996) (other citations omitted). Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest. Commonwealth v. Ellis, 379 Pa. Super. 337, 549 A.2d 1323, 1332 (1988), appeal denied, 522 Pa. 601, 562 A.2d 824

(1989), citing California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983).

> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. Busch, 713 A.2d at 101. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring Miranda warnings. Commonwealth v. Fento, 363 Pa. Super. 488, 526 A.2d 784, 787 (1987).

Com. v. Mannion, 725 A.2d 196, 200 (Pa. Super. 1999).

Thus, there are two components of a custodial interrogation that must be satisfied to trigger the requirement that police issue Miranda warnings: first, the defendant must be in custody, that is, subject to the functional equivalent of an arrest and, second, the at-issue statement must be prompted by a police inquiry that was likely to evoke an incriminating response. If either of these conditions is not met, suppression will not be warranted under Miranda.

The trial court determined that Appellant was not in custody for Miranda purposes, based on the following analysis:

> In this [c]ourt's view, the interaction between Trooper Schonbachler and [Appellant] was not a custodial interrogation. At the time [Appellant] made her statements to Trooper Schonbachler, [she] had not been arrested. She was not being detained and she was not placed in handcuffs. [Appellant] was suffering from a leg injury and the incident occurred in February, a month in which the average temperature is cold. Trooper Schonbachler opted to ask [Appellant] questions to determine the circumstances of the accident he encountered. He was simply

attempting to gather information to complete his accident report. There was no show, use or threatened use of force during the interaction. There was nothing coercive about the interaction during which [Appellant] made statements. The record is clear that [Appellant] was not arrested until Trooper Schonbachler made observations about [her] impairment after she had been taken to the hospital. Therefore, this [c]ourt did not believe that Trooper Schonbachler violated the requirements of Miranda during his exhange with [Appellant].

TCO at 5. The trial court did not appear to base its decision on the nature of Trooper Schonbachler's questions. However, the Commonwealth asserts that the Trooper's questions related to 'public safety,' and were not intended to elicit an incriminating response. See New York v. Quarles, 467 U.S. 649, 657 (1984) (holding that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination").

Appellant argues that she was subject to a custodial interrogation because:

> First, Trooper Schonbachler investigated the car, and thought that [Appellant] was responsible for the accident and that she left the scene. Second, [Appellant] was separated from her companion and placed in the back of two separate police cars by policemen from two different units for an unspecified amount of time. Third, Trooper Schonbachler closed the door to his police car, meaning that [Appellant] was clearly not free to leave—indeed, she had no way of leaving. Fourth, under these circumstances and without Mirandizing her, Trooper Schonbachler asked [Appellant] multiple questions designed to elicit incriminating responses.

Appellant's Brief at 22. Appellant further contends that this Court's decision requiring suppression in Commonwealth v. Turner, 772 A.2d 970 (Pa Super. 2003), compels the same result in this case.

- 11 -

In Turner, this Court reversed the trial court's order denying suppression of Turner's statement to police, under the following circumstances:

> On October 18, 1998, Police Officer Gabriel Torres responded in uniform to a radio call regarding an automobile accident. Upon arriving at the scene, Torres observed a white vehicle that apparently had struck a parked vehicle. Turner was leaning against the white vehicle, unsteady and barely able to stand. Turner appeared to be falling asleep and failed to respond to Torres's questions. Torres did not smell alcohol on Turner's breath. Torres placed Turner in the back of his police car. In compliance with his police department's policy regarding suspected DUIs, Torres radioed for a supervisor to come to the scene. Sergeant Cassidy arrived on the scene, also in uniform. After discussing the situation with Torres, Cassidy opened the door of Torres's police car, leaned in, and asked Turner if he had taken any narcotics. Cassidy did not apprise Turner of his rights under Miranda. Turner responded that he had taken cough syrup and several pills. Subsequently, the officers arrested Turner. However, Turner refused to consent to a blood test. Thereafter, the Commonwealth charged Turner with [DUI]. Turner moved to suppress his statement to Cassidy, asserting that his detention and questioning by the officers violated his rights under the Fifth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution.

Turner, 772 A.2d at 972 (citation omitted).

The Turner Court first addressed the question of custody, finding that Turner was subject to the functional equivalent of an arrest:

> Torres testified that he "put" Turner into his police car, not that he asked Turner if he wanted to sit in the car or offered the back seat as a place to rest. Turner sat in the car while Torres radioed Cassidy and waited for him to arrive. Torres also testified that Cassidy had to open the car door in order to speak to Turner, which suggests that Torres closed the door after he put Turner inside the car. There is no suggestion in the record that Turner closed the door himself. Based on the totality of the circumstances, we conclude that Turner was physically deprived

- 12 -

of his freedom to a level that was the functional equivalent of being arrested and, therefore, was in custody.

Id. at 974 (citations omitted).

The Turner Court then considered whether the defendant had been subject to an interrogation:

Cassidy, by opening the car door, leaning into the car and questioning Turner regarding whether he had taken any narcotics, was eliciting information. As a trained officer who observed Turner's physical condition, Cassidy should have known that Turner's response might yield an incriminating statement that would lead to Turner's arrest for driving under the influence. Turner did not volunteer that he had taken cough syrup and several pills; a uniformed officer specifically questioned him while he was confined to the police car where another uniformed officer had placed him. We conclude that the combination of Torres putting Turner involuntarily into the police car and Cassidy questioning Turner regarding his drug use while standing in the police car doorway created a custodial interrogation.

Id. (citations omitted). The Turner Court then went on to conclude that the trial court had erred in ruling "that Turner's statement should not be suppressed based on a violation of Miranda." Id. at 976.

Appellant argues that the facts in Turner are sufficiently analogous to the instant case and, thus, require the same result. She contends:

As in Turner, police put [Appellant] in the back of a police car, closed the door and questioned her. Indeed, here, multiple police officers placed [Appellant] in the back of two different police cars, and escorted her from one to the other.

Also as in Turner, Trooper Schonbachler should have known that his interrogation of [Appellant] would yield incriminating statements. First, Trooper Schonbachler knew that no one was at the accident scene when he arrived, admitted that he thought that [Appellant] drove the car, and knew that it was a crime to leave the scene of an accident. Yet, Trooper Schonbachler asked [Appellant] questions that were designed to

- 13 -

induce incriminating statements on 75 Pa.C.S. § 3746(a)(2) anyway. Second, as soon as Trooper Schonbachler noticed the smell of alcohol on [Appellant] he began asking her whether she had been drinking and related questions, yet he still did not read the Miranda warnings. As in Turner, [Appellant] did not volunteer that she had been drinking until an officer "specifically questioned [her] while [she] was confined to the police car[.]" Id. at 974. As in Turner, Trooper Schonbachler was "a trained officer who observed [Appellant's] physical condition," and "should have known that [her] response might yield an incriminating statement that would lead to [her] arrest for driving under the influence." Id.[] This Honorable Court suppressed the incriminating statements in Turner, and the same result is required here. Id. at 976.

Appellant's Brief at 24-25 (some citations omitted).

We agree with Appellant. Indeed, there is an even more compelling case for suppression here than there was in Turner. First, Appellant was in custody for Miranda purposes. Pittsburgh Police apparently detained Appellant before Trooper Schonbachler even came in contact with her. N.T. Suppression, 12/1/16, at 6 ("[Trooper Schonbachler] [p]roceeded up to the location where the City of Pittsburgh [Police] had [Appellant] and Mr. Scott."). Upon cross-examination, he admitted "that the City of Pittsburgh had her stopped at the Boulevard of the Allies." Id. at 12 (emphasis added). At that point, Trooper Schonbachler "put [Appellant] in the back of [his] vehicle and asked her what had happened." Id. Nothing in the record suggests that Appellant voluntarily sat in either police car. See Turner, 772 A.2d at 974 ("Torres testified that he 'put' Turner into his police car, not that he asked Turner if he wanted to sit in the car or offered the back seat as a place to rest."). By contrast, the trial court's analysis here focused solely on the fact

that Appellant was not handcuffed, and had not been formally arrested. The same was true of the defendant in Turner, as he was neither handcuffed nor formally placed under arrest; nevertheless, this Court determined that he was in custody for Miranda purposes.

The Commonwealth suggests the opposite conclusion based on its reading of this Court's decision in Commonwealth v. Williams, 941 A.2d 14 (Pa. Super. 2015) (en banc). However, that case is easily distinguishable from the facts of this case. In Williams, a DUI case,

> Officer Gregory responded to a 911 radio dispatch indicating an accident. When Officer Gregory tried to awaken [the a]ppellant and remove her from the ground, he detected a strong odor of alcohol on her breath. Officer Gregory then called for an ambulance and a tow truck. Officer Gregory assisted [the a]ppellant to her vehicle and asked her to produce her driver's license and registration. When Appellant was unable to locate the requested documents, Officer Gregory told her it was unimportant at the moment, and to "sit tight" until the ambulance arrived. Officer Gregory asked [her] what had happened and if she was the only person involved in the accident. Appellant indicated she was the only person involved with the accident, but was vague on her response to the question of "what happened?"

Id. at 32–33. We held that Williams was not in custody, because no restraints were applied, she was questioned in "public view at the accident scence[,]" and the officer did not threaten her or draw his weapon. Id. at 33. Notably, Williams was also not placed in a police car before being questioned.

Here, however, Appellant was not found unconscious at the scene of an accident, she was found walking away from that location when she was stopped by City of Pittsburgh police. Trooper Schonbachler then placed

Appellant in his vehicle, and no evidence suggests that he asked Appellant to enter his police car, and no evidence suggests that she complied voluntarily. The facts of this case clearly mirror those of Turner, and are quite unlike those of Williams. Accordingly, we conclude that, like the defendant in Turner, Appellant was clearly in custody before Trooper Schonbachler began asking her questions about the accident.

Next, we consider whether Appellant was subject to an interrogation. The trial court found that Trooper Schonbachler was merely inquiring about the circumstances of the accident. However, we find the circumstances of this case demonstrate that Trooper Schonbachler, at a minimum, should have known that his questions were likely to elicit an incriminating response from Appellant. After he already suspected that Appellant had unlawfully fled the scene of the accident, and after he detected alcohol on her breath, Trooper Schonbachler asked Appellant if she had been drinking. Given Appellant's flight from the scene of the accident, this is even stronger evidence of an interrogation than was present in Turner.

The Commonwealth argues that, because Trooper Schonbachler was investigating an accident, the public safety exception to Miranda applies in these circumstances, citing New York v. Quarles, 467 U.S. 649 (1984). For the following reasons, we disagree.

> In Quarles, officers were approached by a young woman, who
>
> told them that she had just been raped by a black male, approximately six feet tall, who was wearing a black jacket with the name "Big Ben" printed in yellow letters on the back. She told

the officers that the man had just entered an A & P supermarket located nearby and that the man was carrying a gun.

The officers drove the woman to the supermarket, and Officer Kraft entered the store while Officer Scarring radioed for assistance. Officer Kraft quickly spotted [Quarles], who matched the description given by the woman, approaching a checkout counter. Apparently upon seeing the officer, [Quarles] turned and ran toward the rear of the store, and Officer Kraft pursued him with a drawn gun. When [Quarles] turned the corner at the end of an aisle, Officer Kraft lost sight of him for several seconds, and upon regaining sight of [Quarles], ordered him to stop and put his hands over his head.

Although more than three other officers had arrived on the scene by that time, Officer Kraft was the first to reach [Quarles]. He frisked him and discovered that he was wearing a shoulder holster which was then empty. After handcuffing him, Officer Kraft asked him where the gun was. [Quarles] nodded in the direction of some empty cartons and responded, "the gun is over there."

Id. at 652. Although Quarles was in custody, and subject to an interrogation, the High Court ruled that his statement was not suppressible under Miranda, holding that "on these facts there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence[.]" Id. at 655. The exception "does not depend upon the motivation of the individual officers involved[,]" rather, it arises out of an objective view of the attendant circumstances to the interrogation. Id. at 656.

The police ..., in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an

- 17 -

accomplice might make use of it, a customer or employee might later come upon it.

In such a situation, if the police are required to recite the familiar Miranda warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. Procedural safeguards which deter a suspect from responding were deemed acceptable in Miranda in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the Miranda majority was willing to bear that cost. Here, had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

Id. at 657.

The public safety exception to Miranda is not applicable in this case. Trooper Schonbachler's question, regardless of his subjective intent, did not serve to avert any risk to public safety. The accident had already occurred, the vehicle in question was no longer operable, and Appellant had already abandoned it in any event. In these circumstances, Trooper Schonbachler's inquiry into the number of drinks that Appellant had consumed did not serve to avert "further danger to the public...." Quarles, 467 U.S. at 657. Rather, the question was clearly eliciting an incriminating response in the circumstances of this case.

Thus, we conclude that the trial court erred when it denied Appellant's motion to suppress. Appellant was subject to a custodial interrogation when she responded to Trooper Schonbachler's question regarding whether she had

been drinking prior the crash. Accordingly, based on Turner, we are compelled to reverse the order denying suppression, and to grant a new trial.

In sum, we reverse Appellant's judgment of sentence with respect to her convictions for DUI at count 2, and driving an unregistered vehicle. We reverse the order denying suppression and vacate her judgment of sentence in all other respects. We remand for a new trial consistent with this memorandum.

Judgment of sentence reversed in part, vacated in part. Case remanded. Jurisdiction relinquished.

Judge Shogan joins this memorandum.

Judge Murray files a concurring and dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2019